Walker *et al. v.* Walker *et al.*

<hr>

WALKER ET AL. *v.* WALKER ET AL.

[No. 18,336.    Filed April 21, 1898.]

150  317
153   15

PLEADING.—*Answer.*—Where an answer is directed to an entire complaint consisting of several paragraphs, in order to withstand a demurrer, it must be good as to all of the paragraphs. *p. 324.*

DIVORCE.—*Property Rights.—Adjudication.*—A decree of divorce by a court having jurisdiction of the parties and the subject-matter constitutes an adjudication between the divorced parties of all property rights or questions growing out of or connected with the marriage. *p. 325.*

SAME.—*Marriage.—Capacity of Parties.*—A decree of divorce settles the fact, as between the parties, that they were duly married to each other, and affirms the capacity of each to enter into the contract of marriage. *p. 325.*

SAME.—*Property Rights.—Breach of Antenuptial Agreement.*—Real estate conveyed by a husband to his wife in pursuance of an antenuptial agreement that in consideration of such conveyance she

was to marry him and care for him as long as he should live cannot be recovered because of a breach of such agreement, after a decree of divorce has been granted.  *pp. 325-328.*

From the Hancock Circuit Court.  *Affirmed.*

*Samuel A. Wray* and *Richard A. Black*, for appellants.

*Marsh & Cook* and *Felt & Jackson*, for appellees.

JORDAN, J.—Thomas Walker, as guardian of William C. Walker, a person of unsound mind, filed his complaint in three paragraphs, and on the 15th day of December, 1896, instituted this action against Gussie M. Walker, William C. Dudding, and William H. Moore, the appellees in this appeal, whereby he sought to set aside a certain antenuptial contract, together with certain deeds executed by his said ward prior to his being adjudged a person of unsound mind, and to quiet the title to the real estate described in the complaint.  Copies of the deeds involved in the action are filed as exhibits.  The material facts disclosed by the first paragraph of the complaint and the exhibits filed therewith, may be summarized as follows:  Some time in 1896 (the exact date is not stated) William C. Walker, the ward, was adjudged by the court to be a person of unsound mind, and plaintiff was appointed his guardian.  On and prior to May 28, 1894, said Walker was the owner in fee simple of the lands mentioned in the complaint. Prior to March 16, 1894, Walker's wife died, and, after living as a widower for some time, he became desirous of again marrying, and formed the acquaintance of Gussie M. Wachestetter, who was his junior by many years, and whose character, as is averred, at that time was bad.  Soon after becoming acquainted with this woman, William C. Walker, who was then an old man, as is alleged, feeble in body and mind, invited

her to come to his home and reside, which she did, and there lived as a member of his family for about a month, during which time he proposed to her that she marry him, which proposition she accepted, and accordingly on the 16th day of March, 1894, they were married at Hancock county, Indiana, and became husband and wife. During the time said Gussie M. resided in the family of William C. Walker, prior to his marriage to her, it is charged that he was under her influence and control, and by means thereof she wrongfully caused and induced him to execute an antenuptial contract, whereby he agreed and promised to convey to her eighty acres of his land, being a part of the real estate in suit, and it is alleged that in consideration thereof she agreed to marry him and live with him as a true and loving wife, and to care for him as long as he should live. After their said marriage it appears that Walker and his wife moved onto the land in controversy, and she then began to persuade and to induce him to convey the same to her, and finally procured him, on the said 28th day of May, 1894, by warranty deed, to convey to her the lands in dispute. The real estate so conveyed to her embraced the eighty acres mentioned in the antenuptial contract, and thirty-six acres in addition thereto. It is also alleged that at the time William C. Walker executed this deed to his wife he was old, and weak in both body and mind, and that she procured him to execute the same by means of promises, persuasions and threats. The deed recites that it is executed by the husband to his said wife in consideration of love and affection, and is made in pursuance to the antenuptial contract existing between the parties, and that the purpose of said conveyance was to vest at the time in the wife the real estate thereby conveyed; and the deed further provided that in consideration of the

thirty-six acres conveyed in addition to the eighty acres, that the grantee, or wife, in the event of the death of the grantor, her husband, was not to be entitled to claim or receive any sum or consideration out of the estate of the grantor, as his widow or otherwise. It is further provided therein that in the event the grantee should not live with the grantor, or should abandon him without just cause, and refuse to take care of him, as stipulated in the antenuptial contract, then the conveyance was to be void and the title to the real estate was to vest in the grantor. It was also provided in the deed that the antenuptial contract was to be continued in force, except as modified by the stipulations in said deed. It is alleged that a short time after the execution of this deed to his wife, Walker became of unsound mind, and has so continued, and while in said condition, on December 3, 1894, his wife sold the real estate to the defendants, Dudding and Moore, and by warranty deed, in which he as her husband joined, conveyed the same to these parties, who have ever since held it, and now claim to be the owners thereof. It is charged that the consideration for the conveyance of the said real estate, paid by Dudding and Moore, was received by the wife, and no part of the same was ever paid to the husband. It appears, however, by the stipulations and terms of the deed of Walker and wife to these defendants that the land was conveyed to them subject to certain encumbrances therein mentioned, which they agreed to pay and satisfy. It also appears that after the execution of the deed to Dudding and Moore by Walker and wife, that she deported herself in an unchaste manner, and failed to comply with the terms of the antenuptial contract or with the terms of said deed of conveyance, and finally left and abandoned her said husband. It is also alleged that the defendants,

Dudding and Moore, at the time of the conveyance of said real estate to them, knew of the provisions and stipulations contained in both the antenuptial contract and the deed of Walker to his said wife, and knew that she had violated the same, and a disaffirmance of the deed by the guardian is alleged, and the prayer is that the antenuptial contract and the deeds in controversy be set aside, and that the title to the lands be quieted in the plaintiff.

The facts averred by the second and third paragraphs are in the main similar to those alleged in the first, except in the second it is charged that the plaintiff's ward, at and before the execution of the antenuptial contract, and at the time of his said marriage to the defendant Gussie M. Walker, was a person of unsound mind, and so continued to the commencement of this action.

The third paragraph avers a breach of the antenuptial contract on the part of the wife, and also her failure to comply with the provisions and stipulations contained in the deed of conveyance to her, and it is therefore sought to set aside each of these instruments.

Appellees unsuccessfully demurred to each paragraph of this complaint, and thereafter filed a joint answer in four paragraphs, all of which except the fourth were subsequently withdrawn, and the latter is the only one appearing in the record. This paragraph of answer, after admitting the execution of the antenuptial contract and the deeds in controversy, proceeds to allege that while the said William C. and Gussie M. Walker were husband and wife, and while they were living together as such, under and in pursuance of the terms of said antenuptial contract and deed, all of which terms and conditions, it is averred,

have been faithfully complied with and performed on the part of the said wife, she and her said husband, William C. Walker, for and in consideration of $4,000.00, sold the land set out in the complaint to the defendants, Dudding and Moore, and by warranty deed, in which her husband joined, conveyed the said realty to these defendants, who took possession thereof and have ever since held it in fee simple as their own. It is averred that at the time these lands were sold and conveyed to said defendants the antenuptial contract was voluntarily surrendered by the said William C. Walker and wife to the defendants and delivered up to them for cancelation, and was subsequently destroyed; that after the said conveyance by Walker and wife, at the December term, 1895, of the Hancock Circuit Court, the said William C. Walker instituted an action in said court against his said wife, Gussie M. Walker for a divorce; that she appeared to this action by her attorney and filed her answer in general denial, and that such proceedings were had between the parties in said divorce suit in said court, that on the 5th day of March, 1895, the court rendered its decree in favor of the plaintiff, William C. Walker, granting him a divorce from his said wife; that said decree was absolute and not appealed from, and still remains in full force and effect; that after the execution of the deeds in dispute, and after said divorce was decreed in favor of said William C. Walker, he was adjudged to be a person of unsound mind, and the plaintiff was appointed as his guardian. It is alleged that by reason of said divorce decree that the rights of plaintiff's ward in respect to said deeds of conveyance, and the rights and interest of his ward in and to the real estate in controversy, have been adjudicated and forever set at rest, and that the plaintiff is not entitled by reason of the facts alleged in said answer to maintain the action, etc.

Plaintiff demurred to this paragraph of the answer for insufficiency of facts, which the court overruled, and thereupon the plaintiff refused to plead further in the action, but elected to stand by his demurrer, and judgment was accordingly rendered in favor of the defendants. After the rendition of this judgment, and before the case was appealed to this court, plaintiff's ward died, and appellants, who are his children and grandchildren by a former marriage, and his only heirs at law, prosecute this appeal against the appellees, and assign that the court erred in overruling the demurrer to the fourth paragraph of the defendants' answer.

The first paragraph of the complaint apparently proceeds upon the theory that the execution of both the antenuptial contract and the deed of conveyance by Walker to his wife were wrongfully procured by the means of her undue influence over her husband. There is no express charge made in this paragraph that plaintiff's ward, at the time he executed either of said instruments, was of unsound mind, but it seems from the averments that his mind became unsound after he conveyed the land to his wife, but before it was sold and conveyed to the defendants, Dudding and Moore. The theory of the second paragraph is that Walker, at and prior to the marriage in controversy, was of unsound mind, and continued to be in such mental condition when he executed the antenuptial contract and the deeds involved in this suit. The theory of the third paragraph seems to be that the wife, being bound by the provisions and stipulations contained in the antenuptial contract, and by those embraced in the deed whereby the real estate was conveyed to her by her husband, failed to comply with, or carry out these provisions, and thereby the title to the land had been forfeited.

Counsel for appellants assert that the only question for our consideration in this appeal is: Does a judgment divorcing a husband and wife settle all questions of property rights between such divorced parties?

The answer here involved was directed to the entire complaint, and upon the assumption that each paragraph thereof was sufficient in stating a cause of action, it must, in order to withstand the demurrer, be good as an answer, to all.

Appellants insist that so far as this pleading attempts to answer the second paragraph of the complaint it is certainly bad, for the reason that it is alleged therein that William C. Walker at the time of his marriage to the appellee, Gussie M., was a person of unsound mind, and so continued until the commencement of this action; consequently, by reason of section 7290, Burns' R. S. 1894 (5325, R. S. 1881), which declares a marriage to be void when either party thereto at the time thereof is insane, they contend that said marriage was an absolute nullity, and all contracts between the parties thereto, growing out of or connected with it, likewise void.

The subject-matter involved in this action under each paragraph of the complaint is the real estate, the title to which the plaintiff seeks to have quieted as against all of the defendants. The appellees, Dudding and Moore, claim title to the land through the deed of conveyance executed to them by their co-appellee and her husband, William C. Walker. The title to this land, which Gussie M. Walker claimed to have, before she and her husband conveyed it to her co-appellees, was founded on the deed which her husband made to her in consideration of love and affection, and in pursuance of the antenuptial agreement. It is evident that before the plaintiff can prevail in

quieting title to the land in this action he would be compelled to avoid the deed of the ward to his said wife. By a long line of decisions beginning with the case of *Fischli* v. *Fischli,* 1 Blackf. 360, the doctrine has been generally affirmed and settled in this jurisdiction that a decree of divorce by a court having jurisdiction of the subject-matter and the parties, is deemed and held to be an adjudication between the divorced parties of all property rights or questions growing out of or connected with the marriage. As a general rule, all such questions, unless excepted therefrom, are considered as put at rest by the judgment, and the parties thereto are precluded thereby until it is set aside in a proper proceeding. *Muckenburg* v. *Holler,* 29 Ind. 139, 92 Am. Dec. 345; *Rose* v. *Rose,* 93 Ind. 179; *Behrley* v. *Behrley,* 93 Ind. 255; *Hills* v. *Hills,* 94 Ind. 436; *Stultz* v. *Stultz,* 107 Ind. 400; *Nicholson* v. *Nicholson,* 113 Ind. 131; *Thompson* v. *Thompson,* 132 Ind. 288; *State, ex rel.,* v. *Parrish,* 1 Ind. App. 441.

Such a decree, also, as between the divorced parties, conclusively settles the fact that they were duly married to each other, which of course implies the capacity of each to enter into the contract of marriage; or, in other words, the decree necessarily affirms the marriage, but frees the parties from the bonds thereof, and no proceeding can be maintained as long as it stands to have the marriage, as originally contracted, declared void. The decree also precludes the parties as to all matters which might have been legitimately proved in support of the charges or defenses in the action. 2 Bishop on Marriage and Divorce, section 766; 5 Am. and Eng. Ency. of Law, p. 847; *Prescott* v. *Fisher,* 22 Ill. 390; *Patton* v. *Loughridge,* 49 Iowa 218.

In the light of the well settled principles to which

we have referred, we may proceed to determine the sufficiency of the answer. It is apparent from the facts that the right which Mrs. Walker claimed to the property here involved grew out of or was connected with the marriage, the relations of which were terminated by the judgment in the suit instituted by the husband for a divorce. The settlement of the lands by him upon her was made, as we have seen, in pursuance of the antenuptial contract, and for the purpose of vesting the title to the property in her at the time of the conveyance. She was to take it, as the deed stipulated, in lieu of any claim or right by her in or to her husband's estate as his widow or otherwise. The answer discloses that the husband instituted the action for a divorce in a court having jurisdiction; that the wife appeared to the suit and filed her answer; that such proceedings were had therein as resulted in the court awarding a judgment in favor of the husband, divorcing him and his said wife. All this occurred after the conveyances mentioned in the complaint had been made, and before the husband was adjudged to be a person of unsound mind and placed under guardianship. These facts the demurrer conceded to be true, and they fully, in our judgment, when tested by the rule affirmed by the authorities, preclude the plaintiff from successfully maintaining this action. It is evident that in the face of this decree neither the divorced husband, nor anyone representing him, would be permitted to question or assail the validity of the marriage between him and his divorced wife. Under the circumstances, the decree must stand and be accepted as precluding or estopping either Walker or his guardian from asserting, as against his wife, in a collateral proceeding like this, that he was insane, either at the time of the marriage, or at the time he sued for and obtained the

divorce. Plaintiff's ward must, consequently, be considered to have been sane when he instituted his action and secured the divorce, and therefore, fully competent to have demanded and procured to be properly adjusted and adjudicated in that suit all matters of property rights arising out of the marriage, and in controversy between him and his said wife. He is presumed to have known that when the marriage relations between them were dissolved by the divorce, that she could no longer live with him as his wife, nor care for him as such, as the complaint charges she agreed to do, in consideration of his settling upon her the property in dispute. Before the action for a divorce was commenced, Mrs. Walker seems to have asserted an absolute claim of title to the land, and had sold the same to her co-appellees for $4,000.00, which amount, it is alleged, was received by her; and, for aught that appears, she was still, at the time the divorce was granted, in possession of this amount of money, received in consideration of the sale of said real estate, and asserting a claim of title thereto. The fact that she had acquired a part of her husband's estate in advance of the divorce action was a matter which the court in that suit had a right to consider as against any claim for alimony made therein by her, either for the purpose of defeating such claim entirely, or to reduce the amount thereof. Section 1057, Burns' R. S. 1894 (1045, R. S. 1881). *Morse* v. *Morse*, 25 Ind. 156; *Stultz* v. *Stultz, supra*.

The fact that the divorce was granted on the grounds of the misconduct of the wife, and that the property by which she acquired the money held by her at the time of the divorce suit, may have been settled upon her by the husband by reason of her wrongful acts, in taking advantage of his alleged mental infirmities, can make no material difference in respect to the

rule that the divorce decree must, as long as it stands, be held to have adjudicated all property rights arising out of or connected with the marriage, and that it confirmed in the wife the right to the property, or the money, claimed by her at the time of the granting of the divorce. *Behrley* v. *Behrley,* *supra,* and cases there cited; *Glaze* v. *Citizens National Bank,* 116 Ind. 492.

Where the wife proves recreant to her marriage obligations, and has destroyed the marital union by acts of adultery or other gross misconduct, and her husband is thereby entitled to a decree of divorce, the court granting the same, has the discretionary power, and, under proper circumstances warranting the same, will generally exercise it, and allot to the injured husband such a portion of the property or means which he had settled upon the wife as will place him in the position, to some extent at least, which he would have occupied had the union continued. 2 Bishop on Marriage and Divorce, section 509a; *Stultz* v. *Stultz, supra.*

All such matters, under the firmly established rule, must be deemed to be by the judgment *res adjudicata,* and neither the divorced husband, nor those claiming to represent him, will be permitted to bring such property questions again into issue as against the divorced wife or those claiming through her.

The rule which precludes the parties in this respect is a salutary one, as it certainly would not be proper after the divorce, to leave open and unsettled questions in regard to property which the wife might have received from the husband during the marriage.

It must follow, therefore, from what we have said, that the paragraph in controversy was substantially sufficient as an answer to the complaint as an entirety, and the court did not err in overruling the demurrer.    The judgment is affirmed.